IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

_____ )
UNITED STATES OF AMERICA,        )
                                 )
        Plaintiff,               )
                                 )
Vs.                              )Case Nos:  2:20-cr-111-SPC-MRM
                                 )           2:12-cr-58-JES-MRM
BRANTLEY SEYMORE,                )
                                 )
        Defendant.               )
_____ )

**FINAL REVOCATION HEARING PROCEEDINGS**
**BEFORE THE HONORABLE SHERI POLSTER CHAPPELL**

**June 7, 2021**
**1:31 p.m.**

**APPEARANCES:**

**FOR THE PLAINTIFF:**  MICHAEL V. LEEMAN, ESQUIRE
                        United States Department of Justice
                        Office of the United States Attorney
                        2110 First Street, Suite 3-137
                        Fort Myers, Florida 33901

**FOR THE DEFENDANT:**  GEORGE ELLIS SUMMERS, JR., ESQUIRE
                        Federal Public Defender's Office
                        2075 West First Street, Suite 300
                        Fort Myers, Florida 33901

**COURT REPORTER:**     Stacey E. Raikes, RMR, CRR
                        2110 First Street, Suite 2-163
                        Fort Myers, Florida 33901

**ALSO PRESENT:**  BRANTLEY SEYMORE, DEFENDANT

Proceedings reported and transcribed by computer-aided
stenography.

1        P R O C E E D I N G S

2            (Court called to order.)

3            THE DEPUTY CLERK:  Good afternoon.  Calling case

4    2:20-cr-111-SPC-MRM and case number 2:12-cr-58-JES-MRM:  The

5    United States of America versus Brantley Seymore.

6            MR. LEEMAN:  Good afternoon.  Michael Leeman on

7    behalf of the United States.  Seated with me at counsel table

8    is United States Probation Officer Katrina Harmity.

9            THE COURT:  Good afternoon.

10            MR. SUMMERS:  Good afternoon, Your Honor.  Ellis

11    Summers on behalf of Brantley Seymore.  Mr. Seymore is present

12    at counsel table.

13            THE COURT:  Good afternoon.

14            Mr. Seymore has two cases before the Court.  One was

15    a violation of supervision that was previously before Judge

16    Steele.  There was an agreement to bring that revocation over

17    to the Court since I was sentencing him on the instant offense

18    in 20-cr 111.  So I think the easiest thing to do would be to

19    talk about the revocation first and then move on to the actual

20    sentencing in the underlying offense.

21            Mr. Seymore, I'm just going to go through, first of

22    all, the violation of supervision.  There was a petition that

23    was filed based upon two counts; one being new criminal conduct

24    and the other being an association with a person convicted of a

25    felony.  So let's talk about that.

1    First of all, the violation of supervision, you have

2  a right to have a hearing for that violation, if that's what

3  you'd like to do, but you also -- go ahead.

4    MR. SUMMERS:  Your Honor, I don't mean to interrupt.

5  I believe in front of Judge Steele we actually already admitted

6  to two violations.

7    THE COURT:  Okay, all right.  Then that being the

8  case, the Court merely -- and I would assume Judge Steele

9  adjudicated him guilty of those violations then?

10    MR. SUMMERS:  That is my recollection, Your Honor.

11  I'm looking through the paperwork right now.  And it may be

12  that they never print it off and put it in my file.

13    THE COURT:  Well, how about we just go through it,

14  anyway, even -- it's just a -- it's not going to take very

15  long, but that way, it's all in the same proceeding; how about

16  that?

17    MR. SUMMERS:  Whatever pleases the Court.

18    THE COURT:  Okay, thank you.

19    All right, Mr. Seymore, there were two those

20  violations.  Either you did go before Judge Steele and already

21  admit to those, I'm not sure, but for purposes of me sentencing

22  you, I would just like to hear, first of all, the new criminal

23  conduct violation.  As I said, you can have a hearing on this

24  or you could admit to the allegations.  Sounds like everything

25  that I've heard from counsel you're going to admit to those

1   allegations, plead guilty to them, and then be sentenced; is

2   that right?

3           THE DEFENDANT:  Yes, ma'am.

4           THE COURT:  Okay.  So let's talk about that new

5   criminal conduct, possession with intent to distribute a

6   controlled substance.  How do you plead to that allegation?

7           THE DEFENDANT:  Guilty.

8           THE COURT:  And is that because you've pled guilty to

9   the underlying offense here before me, I guess, it would be,

10  this 20-cr-111?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Okay.  So you did, in fact -- you were

13  arrested after a traffic stop and you were in possession of

14  cocaine; is that correct?

15          THE DEFENDANT:  Yes.

16          THE COURT:  All right.  And, based on the 13 grams,

17  was it your intent to distribute that cocaine base?

18          MR. SUMMERS:  And, Your Honor, and this is the reason

19  I know we've done this before, there's a little issue with the

20  13 grams because, once it was actually weighed and in the file

21  on the underlying case, I think the final total is -- I think

22  it's 5.8 grams.  Let me check.

23          MR. LEEMAN:  It is, Your Honor.  5.83.  13 grams was

24  what it weighed in the package and I think that's what

25  probation had when they drafted it up.

1          THE COURT:  Okay?

2          MR. LEEMAN:  But it ultimately turned out to be 5.8

3   grams of cocaine base.

4          THE COURT:  All right.  So was it, in fact, your

5   intent then to distribute that 5.8 grams of cocaine?

6          THE DEFENDANT:  Yes.

7          THE COURT:  All right.  There's a second violation

8   that you were associated with a convicted felon in violation of

9   condition nine of the standard conditions; is that correct?

10          THE DEFENDANT:  Yes.

11          THE COURT:  And do you plead guilty to that

12   violation?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And is that because you were in contact

15   meeting with Carl Crowe, who is a convicted felon?

16          THE DEFENDANT:  Yes.

17          THE COURT:  All right.  Having admitted counts one

18   and two, the Court would adjudicate you guilty of those counts

19   and we'll look at the sentencing in regard to that.

20          The Court also has before it 20-cr-111, the

21   sentencing for the instant offense, and that situation involved

22   February 9th of 2021, you entering a plea of guilty to count

23   one of the indictment charging you with that possession with

24   intent to distribute a mixture or substance containing a

25   detectable amount of cocaine base in violation of Title 21

1   United States Code Section 841(a)(1), and that's what we were

2   just talking about, as you've admitted.

3            I did accept your guilty plea after you pled before

4   the Magistrate Judge, you were adjudicated guilty of the

5   offense, and so now we've reached the stage of the proceedings

6   where it is time to sentence you on that case as well, or that

7   crime as well.

8            So let's talk about the presentence investigation

9   report.  Did you have an opportunity to carefully read over the

10  presentence report in that case?

11           THE DEFENDANT:  Yes.

12           THE COURT:  And did you discuss the presentence

13  report with your attorney?

14           THE DEFENDANT:  Yes.

15           THE COURT:  Was he able to answer any questions that

16  you might have had?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Did you pay close attention to the

19  factual accuracy of the report?

20           THE DEFENDANT:  Yes.

21           THE COURT:  And did you discuss that with him as

22  well?

23           THE DEFENDANT:  Yes.

24           THE COURT:  In regard to the factual accuracy of the

25  report, are there any objections to that?

1          MR. SUMMERS:  No, Your Honor there are no objections

2     to the factual accuracy.

3          THE COURT:  Any objections to the probation officer's

4     application of the guidelines?

5          MR. SUMMERS:  There is one, Your Honor.  The Court's

6     probably already reviewed it and seen that it is really just

7     for preservation purposes.

8          The objection is to page 5, paragraph 27.

9     Essentially, the cocaine possession with intent to sell,

10    manufacture, deliver, et cetera is a controlled substance

11    offense requiring enhancement under United States Sentencing

12    Guideline 4B1.1.  The argument, Your Honor, is that for Florida

13    drug convictions under Florida Statute 893.13, as of May 13,

14    2002, there was no longer a mens rea requirement regarding the

15    elicit nature of the controlled substance.

16         Differently, the Controlled Substance Act for federal

17    law and various statutes do require that the defendant know the

18    elicit nature of the substance being sold or distributed such

19    that the argument that we have previously made is that the

20    Florida Statute is not a controlled substance which requires or

21    provides for enhancement under career offender.

22         That argument has been rejected, I believe, multiple

23    times in the Eleventh Circuit.  So we raise this just for

24    preservation purposes in case the United States Supreme Court

25    or, I guess, the Eleventh Circuit en banc would revisit that

1  issue.  We understand that the guidelines are correctly scored

2  as the law currently is under the Eleventh Circuit, but if it

3  changes, we want to preserve it for that purpose, Your Honor.

4           THE COURT:  All right.

5           Mr. Leeman, anything that you wanted to add?

6           MR. LEEMAN:  I would just state that the government

7  agrees it is currently foreclosed by Eleventh Circuit case law

8  and the government would rely on those cases.  Mr. Summers

9  cited them, and the United States agrees with them, in his

10  objections, which are attached to the final PSR.

11          THE COURT:  All right.  And I would note that the

12  Court has read the defendant's sentencing memorandum that was

13  filed and has listened to the arguments.  I would overrule your

14  objection, follow the Eleventh Circuit precedent on the issue

15  of the enhancement under the cocaine possession with intent to

16  sell, manufacture, or deliver, which was the defendant's

17  conviction from December 10th of 2012.

18          Does the government have any objection to the factual

19  accuracy of the report?

20          MR. LEEMAN:  No, Your Honor.

21          THE COURT:  Any objection to the probation officer's

22  application of the guidelines?

23          MR. LEEMAN:  No, Your Honor.

24          THE COURT:  Mr. Summers, other than that objection

25  that you raised merely for purposes of preserving, any other

1     objections to the probation officer's application of the

2     guidelines?

3                MR. SUMMERS:  No, Your Honor.

4                THE COURT:  All right.  The Court then would adopt

5     the undisputed factual statements and guideline applications

6     contained in the presentence report, would note the objection.

7     As to the controverted factual statements and guideline

8     applications, based upon your objection, the Court, obviously,

9     has overruled that.  I adopt the position of the probation

10    office.  Therefore, the Court is going to determine the

11    advisory guideline range to be a total offense level of 29, a

12    criminal history category of VI.  That would be anywhere

13    between 151 and 188 months of incarceration followed by three

14    years of supervised release, a fine of anywhere between $30,000

15    and $1 million, and a $100 special assessment based upon the

16    plea to the one count.

17                That being the case then, I would listen to any

18    argument of counsel.  As I said, I have read your sentencing

19    memo, but I would entertain any argument that you want to make

20    in regard to what you believe the appropriate sentence should

21    be.

22                MR. SUMMERS:  Thank you, Your Honor.

23                Your Honor, in this case, as the Court's already

24    mentioned, it's reviewed our sentencing memorandum and our

25    recommendation to the Court is 120 months and it's really a

1  two-tier argument.  But, just to begin, I would point out we

2  would be asking for 120 months on the new case, which,

3  obviously, is a downward variance, but we'd also ask that, on

4  the supervised release violation, that any time be concurrent.

5  Certainly, if the Court gives him a guideline sentence, we

6  would just ask that it be concurrent to the 120 months on the

7  new case.

8          The argument is, as we set forth in the sentencing

9  memorandum, first, Mr. Seymore has lived a fairly difficult

10 life.  He was born into really extreme poverty.  His father

11 died of AIDS.  His mother was physically abused in front of

12 him.  Mr. Seymore was sexually abused himself as a child, and

13 he had a very difficult childhood.  And, at some point, he

14 began to suffer from very serious mental health issues.

15 Namely, bipolar disorder II and posttraumatic stress disorder.

16 These were undiagnosed for a very long time.  And Dr. Lokitus,

17 who wrote a -- I think it's a report to the Court, which was

18 attached to the sentencing memorandum as Exhibit 1, did a

19 really good job of summarizing sort of what -- how bipolar

20 disorder affected Mr. Seymore and how it really affects his

21 life.  Namely, this is a disorder which is characterized by

22 mood swings along with periods of impulsivity and poor

23 judgment.  He pointed out that in 40 to 70 percent of people

24 who are not diagnosed with bipolar disorder end up with a

25 substance abuse problem because what happens is they

1    self-medicate. They know something's wrong and they know they

2    have to treat it, but they don't know it's a medical issue and

3    they use drugs or alcohol. In his case, unfortunately, it was

4    frequently cocaine and he ended up with a drug problem.

5         Dr. Lokitus pointed out that, between the concurrence

6    of the bipolar disorder and the drug addiction, which

7    frequently comes along with it, it's really not surprising that

8    his life went down a different path and, in his case, made

9    numerous poor judgments, including the resulting case.

10        So this is an individual who, certainly, what he's

11   done is illegal and he understands that and he knows he needs

12   to be punished, and we're certainly asking for a serious

13   punishment, but we're also asking the Court to take into

14   consideration the mitigation that Mr. Seymore has. And, in

15   that case, he's an individual who's suffering from a serious

16   mental health disorder and individual who had a very difficult

17   childhood which, frankly, probably, if it didn't aggravate, may

18   have been the cause for his mental health issues.

19        Your Honor, now, the second part of our argument

20   relates to, yes, he absolutely is a career offender. Yes, he's

21   absolutely, as under current Eleventh Circuit law, he is

22   absolutely scored correctly, 151 to 188 months. But it's

23   important to note, Your Honor, that two of the convictions are

24   within a few months of each other in -- I believe it's 2012.

25   One gets prosecuted in state court, one gets prosecuted in

1   federal court.  Both are drug distribution charges.  Obviously,

2   during that same timeframe, he was distributing drugs.  That's

3   why he was convicted.  He was prosecuted under two different

4   sovereigns and that's sometimes just how it goes, but he could

5   have just as easily been prosecuted by one court.  It could

6   have been in federal court, it could have been in state court.

7   And, right now, by really just the fickle finger of fate, he

8   would not be a career offender.  It very well could have been

9   prosecuted in such a manner that he would be sitting here with

10  just one predicate and then his guidelines would be 30 to 37

11  months.  And so, Your Honor, we recognize that he's properly

12  scored, but we also point out to the Court that things could

13  have been different and his guideline range would have been

14  very different under those circumstances.

15          So, Your Honor, for those reasons, we would ask that

16  he be sentenced to 120 months and that it be concurrent with

17  whatever the sentence is in the supervised release violation.

18  The only other things we would ask, we would ask that he be

19  able to take advantage of any and all drug and alcohol programs

20  that the Bureau of Prisons offers.  In particular, the 500-hour

21  program.  We also would ask that he be able to take advantage

22  of any and all mental health treatment that they might have.

23  We would also ask if the Court would be willing to ask that he

24  receive a mental health evaluation upon arrival at the Bureau

25  of Prisons.  The reason being he certainly is on medication now

1     and we would certainly want that medication to continue so he

2     doesn't degrade until he can finally be medicated.  Also, Your

3     Honor, we would ask that he be housed as close to home as

4     possible.  And, finally -- and I know that government's going

5     to say that this is foreclosed by statute and it may be -- he

6     has a doctor's appointment on June 28th for a heart issue and

7     we would just ask for self-surrender on or about July 1st.

8     He's supposed to wear a heart monitor, which then will give

9     readings that the doctor's going to evaluate.

10          In the alternative, if the Court agrees with the

11    government that that is foreclosed and he must be remanded

12    today, we would ask also ask that, as soon as he reaches the

13    Bureau of Prisons, we would just ask for evaluation that he be

14    evaluated for any and all, I guess, heart issues so that

15    whatever treatment he was going to receive, maybe the Bureau of

16    Prisons would evaluate the same issue.

17          Thank you, Your Honor.

18          THE COURT:  What is your recommendation for the

19    violation?

20          MR. SUMMERS:  Your Honor, we just -- we would ask --

21          THE COURT:  I know that you recommend that it be

22    concurrent.

23          MR. SUMMERS:  Concurrent.  Guideline sentence.

24          THE COURT:  Okay.

25          MR. SUMMERS:  But just that it be concurrent.

1        THE COURT:  All right, thank you.

2        Mr. Leeman?

3        MR. LEEMAN:  Yes, Your Honor.

4        We're asking for a sentence of 160 months on the

5    indictment, Your Honor.  That's slightly over the bottom of the

6    guidelines range.  Looking at Mr. Seymore -- I agree with a lot

7    of what Mr. Summers said when you look at Mr. Seymore.  There's

8    some natural, I think, tug to pull down on his sentence.  The

9    amount of crack cocaine found here, for instance, wasn't an

10   overwhelming amount.  Some of the crack cocaine found in one of

11   his two qualifying convictions, I believe, was 3 grams of crack

12   cocaine.  Again, not an overwhelming amount.  But I think

13   what's sort of missed in that is Mr. Seymore, prior to that

14   even, had a federal -- another federal conviction for, by

15   reading the presentence report, participation in a fairly

16   significant drug conspiracy when he was 22 years old.

17       So I agree there's some back and forth tension here

18   between Mr. Seymore's history.  I think, also, Mr. Seymore is,

19   again, on supervised release here, which I think sort of

20   militates pulling the sentence a little bit higher, I should

21   say.

22       We're asking for 160 months, Your Honor.  I think

23   that strikes the appropriate balance.  I should also say, or

24   want to say, Mr. Seymore's been out, which is fairly uncommon

25   for drug defendants, and by all accounts, he's done very well

1    while released.  So that's to his credit.

2         We're asking for 160 months and then we would also be

3    comfortable recommending a guideline sentence on his term of

4    supervised release to run concurrent.  160 months is far more

5    time than he's ever done in prison.  I'm not sure that adding

6    on another two years for supervised release is going to change

7    things one way or another for Mr. Seymore.  If 160 months

8    doesn't get through to him, I'm not sure that 160 months plus

9    two years is going to get through to him either.

10        So we're asking for the 160-month sentence and then a

11   guideline sentence on supervised release to be run concurrent.

12   I want to note, however, that probation disagrees and the

13   guidelines disagree as well.  Supervised release violations

14   are -- should be run consecutively to any underlying criminal

15   conduct, but the Court does have discretion to run those

16   concurrently, if it would like to.  The guideline provision

17   that addresses that, Your Honor, is 7B1.3(f).

18        THE COURT:  Mr. Summers, is there anything further?

19        MR. SUMMERS:  Your Honor, just extremely briefly.

20        THE COURT:  Go ahead.

21        MR. SUMMERS:  I just -- I agree with the government

22   with respect to he has actually been sort of the model pretrial

23   release defendant.  He's had no problems, that I'm aware of, at

24   all and I think a lot of that really has to do with the fact

25   that he's gotten mental health treatment since he's been on.

1   He's seeing Dr. Lokitus and he actually has another therapist

2   and they've gotten him on the right track, finally, treating

3   him correctly and I think that's a -- that's, for his

4   rehabilitation and someday reentry to society, that's the key.

5   If he's being treated correctly for his mental health issues,

6   then he's going to be flying straight.

7          And, Your Honor, I would just point out that the one

8   other offense the government did talk about that was from -- I

9   think it's from 1996.  So it's very old in nature.

10         Thank you, Your Honor.

11         THE COURT:  Thank you.

12         MR. LEEMAN:  Your Honor, if I may, I did forget to

13  address the remand issue.  Mr. Summers indicated we did

14  disagree on that.  I didn't give my position.  If I could just

15  state it quickly?

16         THE COURT:  Go ahead.

17         MR. LEEMAN:  18 U.S.C. 3143, there is a small subset

18  of classes, including drug offenses, with penalties for over

19  ten years in which, strictly speaking, upon an adjudication of

20  guilt, a person is supposed to be detained pending their

21  sentencing.  We're actually already at Mr. Seymore's sentencing

22  so he's been out despite the statute's requirement that he be

23  in.  That is, unless the judicial officer, "Finds there is a

24  substantial likelihood that a motion for acquittal or new trial

25  will be granted."  Well, clearly, that's not happening here.

1    "Or an attorney for the government has recommended that a

2    sentence of no imprisonment be imposed."  Well, clearly, that's

3    not happening here either.  So I do think 3143 requires remand

4    today despite Mr. Seymore's good behavior and his pending

5    medical evaluation.

6              THE COURT:  All right, thank you.

7              Mr. Summers, anything else?

8              MR. SUMMERS:  Your Honor, if I could just have one

9    moment?

10             THE COURT:  Yes.

11             (Pause.)

12             MR. SUMMERS:  The government correctly reminded me

13   just to advise the Court that Mr. Seymore may or may not have a

14   statement to make to the Court.

15             THE COURT:  Thank you.  I appreciate that.

16             Mr. Seymore, I'd certainly want to listen to anything

17   you have to say to the Court prior to sentencing as well.

18             THE DEFENDANT:  I'd just like to apologize to the

19   Court and apologize to my family.

20             THE COURT:  All right, thank you.

21             Is there any reason then, Mr. Summers, why the Court

22   should not now pronounce the sentence?

23             MR. SUMMERS:  No, Your Honor.

24             THE COURT:  All right, thank you.

25             The Court has asked the defendant why judgment should

1   not now be pronounced and, after hearing the response, I don't

2   find any cause to the contrary.  I've listened to the arguments

3   of counsel and the defendant's statement just now.  I've

4   reviewed the presentence report and the advisory guideline

5   range.  I've also reviewed the defendant's sentencing

6   memoranda.  Appended to the PSR was Dr. Lokitus' report, or at

7   least it's part of the record, and I think it's important that

8   that report go to the Bureau of Prisons, as he has been dealing

9   with you, Mr. Seymore, and, apparently, has a good handle on

10  where you stand and what will assist you while you're in the

11  Bureau of Prisons.  So, hopefully, that will assist them in

12  looking at your situation.

13          I've had the opportunity to look at your prior

14  criminal history and, as I said, the advisory guideline range.

15  I've looked also, as the Court has to do with the Section

16  3553(a) factors, the nature and circumstances of the offense,

17  your history and characteristics, the need for the sentence

18  imposed to reflect the seriousness of the offense, promote

19  respect for the laws, and provide just punishment.  Also to, if

20  need be, assist in the appropriate counseling, mental health

21  treatment, those types of things.

22          So I've reviewed all of that.  Your counsel is asking

23  for a variance from the sentencing guidelines based upon your

24  mental health history as well as, I guess, your familial

25  history growing up, those types of things.

1    The Court, in weighing all of the information before

2    it, believes that a low end of the guideline sentence is

3    appropriate and would decline to vary under the circumstances.

4    I've looked at everything here, and, I think, in order to

5    promote respect for the laws and provide just punishment,

6    especially given the fact that you do have these prior drug

7    offenses, that a low end of the guideline sentence is

8    appropriate.

9    Therefore, pursuant to Title 18 United States Code

10   Section 3551 and 3553, it is the judgment of the Court that you

11   be committed to the custody of the Bureau of Prisons to be

12   imprisoned for a term of 151 months.  In looking at the

13   violation of supervised release, pursuant to Chapter -- well,

14   pursuant to the guidance to the Court, and I understand the

15   Court does have the discretion, a violation of supervised

16   release should run consecutive to the term of imprisonment

17   imposed in this particular case.  Specifically, you were on

18   supervision and committed a new offense, and the Court takes

19   that very seriously.

20   I do understand that counsel's asking for a

21   concurrent sentence, both counsel are asking for that, but I

22   believe that it's important to send the message that if you are

23   on supervised release and you commit new offenses, that you

24   will be justly punished for that.

25   Therefore, the Court, in regard to the violation of

1    supervision in 12-cr-58 will run 24 months consecutive to your

2    term of imprisonment imposed in this judgment.  That will be 24

3    months on count one concurrent to 24 months on count two and

4    consecutive to this particular charge in 20-cr-112.  Or 111.

5         Upon release from custody, you will serve a

6    three-year term of supervised release.  While on supervised

7    release, you'll need to comply with the mandatory and standard

8    conditions adopted by the Court in the Middle District.  In

9    addition, you'll need to comply with the following special

10   conditions:

11        You'll need to participate in a substance abuse

12   program, outpatient and/or inpatient, and follow the probation

13   officer's instructions regarding the implementation of the

14   Court's directive.  Further, you'll need to contribute to the

15   costs of the services not to exceed an amount determined

16   reasonable by the probation officer's sliding scale for

17   substance abuse treatment services.  During and upon the

18   completion of the program, you're directed to submit to random

19   drug testing.

20        I am also going to recommend that you participate in

21   the RDAP program, if you shall qualify in the Bureau of

22   Prisons, which will assist you with any substance abuse issues.

23        The Court is also going to require that you

24   participate in a mental health treatment program.  Follow the

25   probation officer's instructions regarding the implementation

1    of the Court's directive.  That is inpatient or outpatient.

2    Further, you'll need to contribute to the costs of the services

3    not to exceed an amount determined reasonable by the probation

4    officer's sliding scale for mental health treatment services.

5          The Court would recommend that, once you are sent to

6    the prison, that you be evaluated through the Bureau of Prisons

7    for any mental health treatment that you would need.

8          You'll need to submit to a search of your person,

9    your residence, your place of business, any storage units under

10   your control, or your vehicle all conducted by the United

11   States Probation Officer at a reasonable time and in a

12   reasonable manner based upon reasonable suspicion of contraband

13   or evidence of a violation of condition of release.  You'll

14   need to inform any other residents that the premises is subject

15   to search pursuant to the condition.  Failure to submit to a

16   search could be grounds for revocation.

17         Because you've been convicted of a qualifying felony,

18   you'll need to cooperate in the collection of DNA as directed

19   by the probation officer.  You must refrain from the unlawful

20   use of any controlled substances, submit to one drug test

21   within 15 days of your placement on supervision, and at least

22   two periodic drug tests thereafter as directed by the probation

23   officer.  You'll need to submit to random drug testing not to

24   exceed 104 tests per year.

25         Based upon your financial status, I am going to waive

1    the imposition of any fine.

2              Mr. Leeman, any forfeiture matters to consider?

3              MR. LEEMAN:  No, Your Honor.

4              THE COURT:  Thank you.

5              It is further ordered that you pay the United States

6    a special assessment of $100, which is due immediately.

7              The Court would recommend that, while in the Bureau

8    of Prisons, that you be housed as close to home as possible.

9    The Court is also going to recommend that the Bureau of Prisons

10   evaluate you for any type of health issues, specifically heart

11   issues, once you are placed.

12             There is a special assessment of $100, which is due

13   immediately to the United States.

14             In regard to the violation of supervision, as the

15   Court indicated, you will serve the 24 months on count one and

16   count two consecutive to the 20-cr-111 judgment.  Upon service

17   of that sentence, you'll be discharged from any further

18   jurisdiction of the Court in the supervised release case.

19             In that case, in imposing the sentence, the Court has

20   considered the factors set forth in Title 18 United States Code

21   Section 3553(a), the advisory guidelines and policy statements

22   of the Sentencing Commission, and specifically has found that a

23   consecutive time is appropriate.

24             Then, in regard to both cases, the Court having

25   pronounced sentence, does counsel for the defendant or the

1  government have an objection to the sentence or the manner in

2  which the Court has pronounced it?

3            MR. LEEMAN:  No, Your Honor.

4            MR. SUMMERS:  Your Honor, we would object just on the

5  grounds that the sentence is greater than necessary for the

6  purpose of the sentencing.

7            THE COURT:  All right, thank you.  I'll note your

8  objection.

9            The defendant would be remanded to the custody of the

10 Marshal Service to await designation by the Bureau of Prisons.

11 Pursuant to Chapter 18 Section 3143, the Court does not find

12 that there are any circumstances that would warrant the

13 defendant self-surrendering.

14            You do have a right to appeal from the judgment and

15 sentence of this Court within 14 days from the date of the

16 entry of the judgment.  That would be also on the violation

17 case and on the underlying offense.  The government has a right

18 to appeal the sentence, if they wish to do so, as well.  If you

19 do not file the appeal within 14 days, it would be a waiver of

20 your right to appeal.

21            You're advised that you're entitled to the assistance

22 of counsel in taking an appeal.  If you cannot afford counsel,

23 I'll appoint counsel to represent you.  If you're unable to

24 afford the filing fee, the clerk of court is directed to accept

25 the notice of appeal without the filing fee.

1          Are there any other issues that the Court needs to

2     address on either the violation of supervision or of the

3     underlying offense?

4               MR. LEEMAN:  No, Your Honor.

5               THE COURT:  Mr. Summers, anything else?

6               MR. SUMMERS:  No, Your Honor.

7               THE COURT:  All right.  Then the defendant is

8     remanded to the custody of the Marshal Service to await

9     designation by the Bureau of Prisons.  And we would be in

10    recess on the proceedings today.  Thank you.

11               (Proceedings were concluded at 2:06 p.m.)

12                    * * * * * * * * * *

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

UNITED STATES DISTRICT COURT )

MIDDLE DISTRICT OF FLORIDA    )

    I, Stacey E. Raikes, RMR, CRR, Official Court Reporter for the United States District Court, Middle District of Florida, do hereby certify, pursuant to Section 753, Title 28, United States Code, that I was authorized to and did stenographically report the foregoing proceedings; and that the foregoing pages constitute a true and complete computer-aided transcription of my original stenographic notes taken by the undersigned in the above-entitled matter to the best of my knowledge, skill, and ability.

    I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

    IN WITNESS WHEREOF, I have hereunto set my hand at Fort Myers, Lee County, Florida, this 20th day of July 2021.

_____
STACEY E. RAIKES, RMR, CRR
Official Court Reporter